DECISION AND JOURNAL ENTRY.
{¶ 1} Appellant, Amanda M. ("Amanda"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor daughter, C. M., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.
 {¶ 2} Amanda is the natural mother of C.M., born November 25, 2000. On July 27, 2001, C.M. was removed from the home pursuant to Juv.R. 6, apparently because C.M. had scabies and Amanda failed to follow through with necessary medical treatment. Amanda later stipulated that C.M. was a dependent child. On May 24, 2002, CSB moved for permanent custody of C.M.
 {¶ 3} A permanent custody hearing was held, at which CSB presented evidence that focused primarily on whether Amanda had complied with the requirements of her case plan. The trial court found that C.M. had been in the temporary custody of CSB for at least 12 of the 22 months preceding the hearing, that she could not be placed with either parent within a reasonable time, and that it was in the best interest of C.M. to be placed in the permanent custody of CSB. Therefore, the trial court terminated Amanda's parental rights and placed C.M. in the permanent custody of CSB. Amanda appeals and raises two assignments of error.
 FIRST ASSIGNMENT OF ERROR
"The trial court erred and abused its discretion by granting permanent custody where the best interests of the child indicated that a first six-months extension should have been granted."
 SECOND ASSIGNMENT OF ERROR
"The trial court erred by finding that permanent custody was supported by clear and convincing evidence."
 {¶ 4} This Court will address these assignments of error together because they are closely related. Amanda contends that the trial court erred in granting permanent custody to CSB rather than granting a six-month extension of temporary custody.
 {¶ 5} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that the first prong of the permanent custody test was satisfied for two different reasons: (1) C.M. could not be placed with Amanda within a reasonable time and (2) C.M. had been in the temporary custody of CSB for at least 12 of the 22 months immediately prior to the hearing. Amanda does not challenge this finding by the trial court.
 {¶ 7} Amanda does challenge the trial court's findings on the best interest prong of the test and this Court agrees with her that CSB failed to meet its burden to establish that permanent custody was in the best interest of C.M.
 {¶ 8} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
"[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[1].
 {¶ 9} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, 2002-Ohio-34; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 10} This Court is compelled to note that the permanent custody hearing in this case exemplified what appears to a growing trend in permanent custody cases throughout this appellate district. Once again, at the permanent custody hearing, the children services agency focused its evidence almost exclusively on whether the parent had complied with the requirements of her case plan. Although this evidence would be relevant to whether the parent had remedied the conditions that caused the child's removal from the home, and would constitute a relevant factor that the trial court could consider in making its best interest determination, the requirements of the case plan in this case did not directly pertain to any of the mandatory best interest factors.[2] In this case, CSB devoted all of its attention to evidence concerning Amanda's compliance with the case plan and overlooked the mandatory best interest factors. After reviewing the evidence presented at the permanent custody hearing, this Court finds that CSB failed to present clear and convincing evidence that permanent custody was in C.M.'s best interest.
 {¶ 11} As this Court noted in In re Smith, the first best interest factor is "highly significant." This factor focuses on a critical component of the permanent custody test: whether there is a family relationship that should be preserved. In this case, CSB essentially ignored this crucial part of the statutory test. Although CSB presented some evidence of the interaction and interrelationship between C.M. and her foster family, it presented virtually no evidence about the interaction and interrelationship between C.M. and her mother.
 {¶ 12} Despite the fact that the permanent custody motion alleged that there were problems with visitation, no such evidence was presented at the hearing. CSB testimony established only that Amanda missed three visits and it appears that she was not the reason that the visitations did not occur. The case plans filed with the court indicate that visitation had progressed to the point where Amanda was allowed unsupervised, weekend visitations with C.M. It is not clear when weekend visitations occurred or why they apparently were discontinued. According to the guardian ad litem, these extended visitations were discontinued because Amanda moved in with a new boyfriend, not because anything inappropriate had occurred while C.M. was with her mother.
 {¶ 13} The only other evidence pertaining to the interaction and interrelationship between Amanda and C.M. was presented through Amanda's own witness and the testimony was favorable to her. The fiancée of Amanda's sister testified that Amanda and C.M. are bonded and that the interaction between them is "great. You can definitely tell that [C.] loves her mother." The witnesses further described the relationship as "very strong." Although CSB attempted to discredit this witness during cross-examination by focusing on the fact that the witness had observed Amanda and C.M. for only a total of several hours, the trial court had no reason to ignore this testimony, particularly because it was the only evidence presented on this crucial best interest factor.
 {¶ 14} The second best interest factor was completely ignored by the trial court, and the trial court indicated as much in its judgment entry. Due to the young age of the child, the guardian ad litem testified on her behalf. The guardian indicated that permanent custody was not in the best interest of C.M. Instead, the guardian ad litem recommended that the trial court allow more weekend visits between mother and child.
 {¶ 15} The trial court indicated that it considered the testimony of the CSB caseworker in lieu of the guardian ad litem. As this Court stressed in In re Smith, however, this type of weighing of these witnesses' testimony was not within the trial court's statutory authority in a permanent custody case:
"The trial court noted that it attached little weight to the report of the guardian ad litem, however, and failed to even note what the report said. The trial court considered instead the testimony of the CSB caseworker * * *. This was error for two reasons: [(1)] the court did not have the option of disregarding the report of the guardian ad litem for the reasons it stated and (2) it has no authority to consider the child's wishes as expressed by the CSB caseworker, a representative of the very agency that moved for permanent custody.
"R.C. 2151.414(D)(2) explicitly requires the trial court to consider the guardian ad litem's report as an expression of the wishes of a child who is too young to express them herself. The court does not have the option of disregarding it. * * *
"Not only did the trial court fail to consider the report of the guardian ad litem, but it considered instead the testimony of the CSB caseworker * * *. While the caseworker's testimony may be considered as evidence * * *, it cannot be considered as an expression of the child's wishes in lieu of the guardian ad litem's report. R.C. 2151.414(D)(2) authorizes only the guardian ad litem to express the desires of the child.
"R.C. 2151.414(B)(1) requires that the guardian ad litem be neutral and detached from the parties, explicitly stating that "`the guardian ad litem * * * shall not be the attorney responsible for presenting the evidence alleging that the child is an abused or neglected child and shall not be an employee of any party in the proceeding.'" (Emphasis sic.)
 {¶ 16} The custodial history of the child included the fact that C.M. had been living away from her mother for more than a year. As this Court stressed in In re Smith, however, "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." The evidence in this case focused almost exclusively on whether, at the end of the day, Amanda had complied with her case plan. There was no evidence of what transpired while Amanda and C.M. were living apart. Most significantly lacking was any evidence of how this period of separation from her mother impacted C.M.
 {¶ 17} CSB likewise failed to present any evidence pertaining to the final best interest factor, "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." R.C. 2151.414(D)(4).
 {¶ 18} The best interest evidence in this case was almost completely lacking and, what little evidence was before the trial court supported preserving the family relationship, not granting permanent custody to CSB. Because the trial court did not have before it clear and convincing evidence that permanent custody was in the best interest of C.M., the assignments of error are sustained and the judgment of the trial court is reversed and remanded.
Judgment reversed and the cause remanded.
WHITMORE, J. and BATCHELDER, J. concur.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.
[2] Regular visitation with the child is often a requirement of the case plan. Consequently, in such a case, if the agency focused its evidence exclusively on case plan compliance, it would not completely overlook the best interest factors.